

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SDD:AAS/DMP/ICR  *271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 17, 2015

<u>By Hand Delivery and ECF</u>

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Fareed Mumuni
      <u>Magistrate Docket No. 15-M-554</u>

Dear Judge Scanlon:

   The defendant Fareed Mumuni is scheduled to be arraigned today on the above-referenced complaint.  For the reasons set forth below, the government respectfully submits that the Court should enter a permanent order of detention because there is a presumption of detention due to the nature of the charges, and because the defendant presents both a danger to the community and a risk of flight.[1]

I. <u>Background</u>

   As alleged in the complaint, the defendant espouses violent jihadist beliefs and is a fervent supporter of Islamic State in Iraq and the Levant ("ISIL"), a designated foreign terrorist organization.  The investigation has uncovered that the defendant is involved with a plan to provide material support to ISIL.

   Indeed, the defendant's co-conspirators were arrested early on Saturday morning as they attempted to attack a member of law enforcement with knives.  Similarly, this morning, during execution of a search warrant at the defendant's residence in Staten Island, the defendant was arrested after attempting to stab an FBI agent in the torso with a large kitchen knife.  During a search of the defendant's mother's vehicle, investigators recovered another large kitchen knife.

---

[1]  Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendants.  <u>See</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

After his arrest this morning, the defendant waived his Miranda rights and made the following statements in sum and substance and in part. He stated that he has pledged allegiance to ISIL and that he intended to travel to ISIL-controlled territories in order to join ISIL. The defendant further stated that, should his efforts to join ISIL be frustrated, he intended to attack law enforcement officers. He also admitted to discussing the construction of a pressure cooker bomb with Saleh. Moreover, the defendant admitted that he had kept the knife he used to attack the agent wrapped in a T-shirt in his bed, as well as the knife recovered from his mother's vehicle, specifically for use in a confrontation with law enforcement officers. A photograph of the knife the defendant used to stab the FBI Special Agent is attached hereto as Exhibit A.

The defendant is presently charged in a complaint alleging attempted murder of a federal officer, in violation of 18 U.S.C. § 1114.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence, see United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985), while a finding of risk of flight must be supported by a preponderance of the evidence, see United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). As discussed below, all of these factors weigh heavily against pretrial release.

III.    The Court Should Enter a Permanent Order of Detention for the Defendants

   A.   The Nature and Circumstances of the Offense Charged

The charged offense is extremely serious; the defendant is charged with attempting to murder a federal employee. The charged offense involves efforts by the defendant to cause the death of an FBI Special Agent by repeatedly stabbing the FBI Special Agent in the torso with a large kitchen knife. Indeed, in his post-arrest statements, the defendant admitted that he was aware that he was attacking members of law enforcement earlier this morning and that the attack was premeditated, in that, although he did not expect agents to execute a search warrant this morning, he had contemplated confrontations with

law enforcement ahead of time and had already made up his mind that he would attack officers under those circumstances.  The defendant further confirmed his unwavering support of ISIL by admitting that he intended to join ISIL in ISIL-controlled-territories and that, if unsuccessful in that pursuit, he would attack members of law enforcement as he did earlier today.

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence.  See 18 U.S.C. § 3142(g)(1).  The charged offense unquestionably falls within this category, confirming that Congress viewed this crime as sufficiently serious to factor against release on bond.

Moreover, the charged offense carries a maximum sentence of twenty years' imprisonment.  See 18 U.S.C. § 1114(3) (incorporating punishment for attempted murder in violation of 18 U.S.C. § 1113).  The prospect of a lengthy term of incarceration, coupled with the defendant's confirmed desire to unlawfully travel from the United States to join ISIL in ISIL-controlled territories, confirms the defendant's serious risk of flight.  Absent evidence suggesting that the defendant would abide by any conditions of release, there is every reason to believe that he would make efforts to flee from the United States so that he can avoid the prospect of a lengthy prison term and so that he can accomplish his objective of achieving martyrdom.

B.  The Weight of the Evidence

The weight of the evidence against the defendant is extremely strong.  Numerous members of law enforcement witnessed the defendant's attack on an FBI Special Agent with a large kitchen knife.  Further, the defendant admitted in post-arrest statements that he kept knives in his bed and in his mother's vehicle for use during any encounters with law enforcement.  Members of law enforcement seized another large knife from the defendant's mother's vehicle this morning.

Accordingly, the evidence against the defendant is extremely strong, and this factor weighs heavily in favor of a finding that the defendant is both a danger to the community and a flight risk.

C.  The Defendants' History and Characteristics

The defendant's history and characteristics confirm that he is a danger to the community and presents a substantial risk of flight.

As discussed above, the defendant is a danger to the community because of his violent jihadist beliefs, as epitomized in his efforts earlier this morning to murder a federal law enforcement officer and his stated desire to attack members of law enforcement.  Similarly, the fact that the defendant is a sworn supporter of ISIL who intends to travel to ISIL-controlled territories to join ISIL establishes that he is a substantial risk of flight.

3

Moreover, given the substantial term of imprisonment he faces, there is no reason for the defendant to willingly remain in the United States to face trial.  Indeed, were the defendant—who appears to have derivative citizenship in Ghana—to flee the United States, he would have access to parts of the world from which the United States has limited ability to recapture or extradite him.

      D.      The Danger to the Community Posed by the Defendant's Release

The defendant would unquestionably pose a significant danger to the community if released on bond.  Not only did he attempt to murder an FBI Special Agent earlier this morning, but he has also confirmed that this violent response was planned ahead of time.  Additionally, the defendant has admitted that he kept knives in his bed and in his mother's car to be used in the event of an encounter with law enforcement.  As many common household items may be fashioned into deadly weapons, there would be no way to ensure public safety should the defendant be released on bond.  Indeed, were the defendant to be released into the community, there is no reason to believe he would not continue in his efforts to engage in acts of terrorism on American soil.

IV.     Conclusion

For all of the foregoing reasons, the defendant should be detained pending trial.  The defendant is charged with an extremely serious offense that carries a maximum sentence of 20 years' imprisonment.  The government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to court, or his compliance with the court's directives, and the Court should thus enter a permanent order of detention pending trial.

                          Respectfully submitted,

                          KELLY T. CURRIE
                          Acting United States Attorney

By:    /s/ Alexander A. Solomon
       Alexander A. Solomon
       Douglas M. Pravda
       Ian C. Richardson
       Assistant U.S. Attorneys
       (718) 254-7000

cc:     Clerk of Court (by ECF and hand)